A00A2234. JOHNSON v. THE STATE.
(543 SE2d 439)

MIKELL, Judge.

Based on evidence that he attacked, beat, robbed, and tried to strangle 103-year-old Hattie Mobley, Joseph Johnson was convicted of robbery, as a lesser included offense of armed robbery (Count 1), kidnapping with bodily injury (Count 2), burglary (Count 3), aggra-

---

vated assault with a deadly weapon against a person age 65 or older (Count 4), aggravated assault with intent to rob by use of a bed sheet (Count 5), and possession of a knife during the commission of a crime (Count 7). The jury acquitted Johnson of possession of a knife during the commission of an armed robbery (Count 6). Johnson's motion for new trial was denied, and this appeal followed. He raises 18 enumerations of error. We affirm the judgments of conviction on Counts 1, 2, 3, 4, and 7; vacate the judgment on Count 5 because it merges into Count 1; and vacate the sentence on Count 7 and remand for resentencing.

Initially Johnson challenges the trial court's denial of his motion for a directed verdict of acquittal. The standard for reviewing a denial of a motion for a directed verdict of acquittal is whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offenses. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and the evidence must be viewed in the light most favorable to the verdict. *Redd v. State*, 232 Ga. App. 666 (1) (502 SE2d 467) (1998).

Construed to uphold the jury's verdict, the evidence shows that on December 13, 1997, Mobley was lying on her bed, ailing, awaiting her daughter's arrival. Mobley testified that she had left her back door unlocked to facilitate her daughter's entry. When Mobley looked up, she saw Johnson standing in her bedroom. He asked her for $2. When she said no, he threatened to kill her. Then Johnson threw her on the floor, took a sheet from the bed, wound it into a rope, tied it around her neck, and drew it tight, choking her. Johnson struck her face, severely bruising her left eye. He said again, "I'll kill you, I'm serious."

Next, Johnson retrieved a knife from the kitchen. As Mobley reached for the telephone to call the police, Johnson cut the telephone cord. Mobley was terrified; she thought Johnson was going to stab her. She testified: "He told me he'd kill me, in fact, he tried, and left me fastened up in the room, and I could hear him walking down the hall and slam the back door. He meant for me to die." Johnson took $50, money Mobley needed to pay her gas bill.

After Johnson left, Mobley was able to free herself by using a nail file she kept on top of her dresser to loosen the sheet. Her daughter discovered her; Mobley's eye was mangled, her nose was bleeding, and she could hardly stand. Mobley, who was acquainted with Johnson, identified him as her attacker.

When Johnson was spotted by a police officer outside a barber shop later that day, he approached the patrol car and stated: "I'm on drugs. I was going to turn myself in, but I had to speak to my mom

first. . . ." Johnson was taken to the precinct, where he said to another officer: "I didn't mean to hurt her, she's like a mother to me, and I was on drugs, I needed money. . . ." Next Johnson gave a custodial statement, which was ruled admissible at trial pursuant to a *Jackson-Denno* hearing. Detective Kendrick, who videotaped the statement, testified that Johnson told the police that he had entered Mobley's home, taken $50 from her, and used the money to buy crack cocaine. He admitted binding her hands and feet with a bed sheet. He said that "crack made him hurt someone he loved." When asked how the telephone cord became severed, Johnson claimed he tore it with his bare hands.

Johnson testified at trial. He claimed Mobley allowed him to enter her home so that he could hang her curtains. Johnson testified that when he asked Mobley for $2, she retrieved an envelope containing $52 from her bedroom and handed it to him. Defense counsel then asked Johnson: "When did you tie her up?" Johnson replied: "When she started screaming and hollering." According to Johnson, Mobley wanted her money back, but he refused to return it.

Johnson then testified that he exited the bedroom, retrieved a knife from the kitchen, returned to the bedroom, and used the knife to cut the telephone cord. Defense counsel asked Johnson: "You knew that was robbery when you took the money and left the house, didn't you?" Johnson explained that he was experiencing drug cravings, then answered yes.

On cross-examination, Johnson denied that he threw Mobley to the floor but ultimately admitted that he "put" her there. Johnson admitted he "may have" caused the bruises on her face. He denied threatening Mobley. He also testified that he could not remember all that happened during the incident because he was under the influence of drugs at that time.

The evidence is sufficient to enable any rational trier of fact to find Johnson guilty of each offense, as described in detail below.

1. *Robbery.* Under OCGA § 16-8-40 (a),

A person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another: (1) by use of force; [or] (2) by intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another.

The force or intimidation essential to robbery must either precede or be contemporaneous with the taking. *Shropshire v. State*, 224 Ga. App. 504, 505 (480 SE2d 919) (1997).

Johnson alleges he was entitled to a directed verdict of acquittal

because any use of force occurred after the taking. However, Mobley's testimony that he threw her to the floor, tied her up, and threatened to kill her before he took her money authorized the jury to find Johnson guilty of robbery beyond a reasonable doubt. *Jackson v. Virginia*, supra.

2. *Aggravated assault with intent to rob*. OCGA § 16-5-21 (a) (1) and (2) provide: "A person commits the offense of aggravated assault when he or she assaults . . . with intent to . . . rob . . . with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."

Mobley testified that after she refused to give Johnson her money, he wound a bed sheet into a rope, tied it tightly around her neck, and tried to strangle her. This evidence amply supports Johnson's conviction under *Jackson v. Virginia*, supra. Moreover, there is no merit in Johnson's argument that a fatal variance exists between the allegata and the probata. The evidence fully comported with the offense as alleged in the indictment. However, Johnson's conviction on this charge merges with his robbery conviction as a matter of fact. See Division 10, infra.

3. *Kidnapping with bodily injury*. Johnson contends that the evidence was insufficient to support his conviction for this offense under OCGA § 16-5-40 (a) because the state failed to prove the essential element of asportation. However, as we held in *Harshaw v. State*, 222 Ga. App. 385, 386 (1) (474 SE2d 226) (1996), asportation requires only the slightest movement of the victim. In *Harshaw*, evidence that the defendant pushed the victim to the ground was held sufficient. Likewise, in *Woodson v. State*, 242 Ga. App. 67, 69 (1) (530 SE2d 2) (2000), evidence that the defendant shoved and pulled the victim to the floor was held to constitute asportation. The case sub judice is indistinguishable from *Harshaw* and *Woodson*. Mobley's testimony that Johnson threw her to the floor demonstrated asportation. Moreover, the photographs introduced into evidence without objection vividly demonstrated the victim's injuries. Accordingly, the evidence supported Johnson's conviction of kidnapping with bodily injury under the standard of *Jackson v. Virginia*, supra.

4. *Burglary*. A person commits burglary if he enters the dwelling of another without authority and with the intent to commit a theft therein. OCGA § 16-7-1 (a). Johnson admitted his intention to take Mobley's money. The conflict between her testimony and Johnson's testimony concerning whether he was authorized to enter her house was a matter of credibility for the jury to resolve, and we will not disturb its finding on appeal. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citations and punctuation omitted.) *Jackson v. State*, 236 Ga. App. 260

(511 SE2d 615) (1999). The evidence amply supports defendant's conviction of burglary under the standard set forth in *Jackson v. Virginia*, supra.

5. *Aggravated assault with a deadly weapon against a person age 65 or older.* Assault is defined as an "act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2). Assault becomes aggravated when it is committed with a deadly weapon. OCGA § 16-5-21 (a) (2). The sentence imposed upon a conviction of this offense is enhanced if the victim is at least 65 years old. OCGA § 16-5-21 (d); see *Howard v. State*, 230 Ga. App. 437, 439 (5) (496 SE2d 532) (1998).

Johnson argues that the evidence raised only a grave suspicion of his guilt. We disagree. Mobley testified that after Johnson tied her up and beat her, he returned to her bedroom wielding a knife and cut the phone cord, all the while threatening to kill her. Johnson admitted possessing the knife in her bedroom. Johnson's self-serving testimony that he denied threatening her created nothing more than a conflict in the evidence for the jury to resolve. The evidence was sufficient to authorize a rational trier of fact to conclude that Johnson was guilty beyond a reasonable doubt of aggravated assault. *Jackson v. Virginia*, supra.

6. *Possession of a knife during the commission of a crime.* Johnson argues that the state failed to prove that the blade of the knife introduced into evidence was three or more inches long, an essential element of the offense under OCGA § 16-11-106 (b) (1). We disagree. Initially we note that defense counsel repeatedly referred to the knife as a "butcher" knife. While no witness testified to the length of the blade, the knife was admitted into evidence. The jury was charged, in two separate instances, that Johnson could not be convicted of this offense unless the jury found that the knife had a "blade three inches or more in length." Further, we rejected the same argument in *White v. State*, 203 Ga. App. 889 (418 SE2d 149) (1992).

> [J]urors [are authorized] to exercise their primary senses of sight, taste, smell, etc., upon real objects introduced before them. . . . A jury is entitled to consider as proven certain matters even without any testimony being introduced. . . . Jurors . . . are entitled to use their own common sense as intelligent human beings on many questions.

(Citations and punctuation omitted.) Id. at 891 (4). Consequently, this enumeration is without merit.

7. Johnson argues that the trial court erred in admitting the knife into evidence because the state failed to authenticate it. We disagree. Mobley identified the knife, as did her daughter, Eloise Phoe-

nix. Phoenix testified that the knife was distinct from others in her mother's possession because it had a hole in the handle. Accordingly, the trial court did not abuse its discretion in admitting the knife into evidence.

8. Johnson next asserts that the trial court improperly charged the jury on the offense of possession of a knife during the commission of a crime. The trial court gave the applicable pattern charge. See Council of Superior Court Judges, *Suggested Pattern Jury Instructions* (2nd ed.), Vol. II: Criminal Cases, Part 5 (M). This enumeration is meritless.

9. Johnson asserts that the trial court incorrectly ordered his sentence for possession of a knife during the commission of a crime (five years) to run consecutively to his sentence for kidnapping with bodily injury (life without parole). Reluctantly, we agree. In *Busch v. State*, 271 Ga. 591, 593 (523 SE2d 21) (1999), the Supreme Court construed OCGA § 16-11-106 to mean that the five-year sentence of subsection (b) can run consecutively only to the felony underlying the possession of a weapon offense. Accordingly, as Johnson's five-year sentence on Count 7 can run consecutively only to his sentence on Count 4, we vacate Johnson's sentence on Count 7 and remand for resentencing.

10. While Johnson enumerates four errors regarding merger of offenses, only one has merit. The key question in determining whether offenses have merged is whether the different offenses are proven with the same set of facts. "For example, if one crime is complete before the other takes place, the two crimes do not merge. However, if the same facts are used to prove the different offenses, the different crimes merge." (Citation omitted.) *Reeves v. State*, 233 Ga. App. 802, 805 (2) (505 SE2d 540) (1998).

It is well settled that aggravated assault is not included in robbery as a matter of law, but it may be included as a matter of fact. *Taylor v. State*, 219 Ga. App. 475, 478 (4) (465 SE2d 473) (1995). In the case sub judice, the evidence adduced to convict Johnson of aggravated assault with intent to rob — that he threw the victim on the floor, hit her, and strangled her with a bed sheet — is part and parcel of the evidence underlying his robbery conviction. The offenses merge as a matter of fact. Consequently, the trial court erred in entering a judgment of conviction and sentence for aggravated assault with intent to rob as alleged in Count 5 of the indictment. That judgment of conviction is vacated, and the trial court is directed to strike the sentence imposed on the fifth count. See *Hambrick v. State*, 256 Ga. 148, 150 (4) (344 SE2d 639) (1986).

11. However, Johnson's conviction for aggravated assault with a deadly weapon does not merge with his conviction for robbery. Different facts were used to prove the offenses. Johnson wielded the knife

to cut the telephone cord and to threaten Mobley after using force to rob her; consequently, the acts surrounding his use of the knife were separate from those involving his use of the bed sheet. Johnson was properly convicted and sentenced for both crimes. See *Clay v. State*, 209 Ga. App. 266, 269 (3) (433 SE2d 377) (1993); *Williams v. State*, 184 Ga. App. 480, 481 (2) (361 SE2d 713) (1987).

12. Nor is there merit in Johnson's argument that his conviction for aggravated assault with intent to rob merges with his conviction for kidnapping with bodily injury.

> As a matter of law, aggravated assault — with intent to rob as the factor in aggravation — is not a lesser included offense of kidnapping with bodily injury. The two offenses share no essential elements. Aggravated assault with intent to rob requires the reasonable apprehension of receiving bodily injury and proof of the intent to rob the victim. Kidnapping with bodily injury requires no such finding. The kidnapping, as indicted, requires the finding of an unlawful abduction and actual injury, while such finding is not necessary for conviction for aggravated assault with intent to rob.

(Citations omitted.) *Brown v. State*, 232 Ga. App. 787, 788-789 (2) (504 SE2d 452) (1998).

13. Next, Johnson challenges the admission of similar transaction evidence. He alleges that the offense, an armed robbery to which Johnson pleaded guilty in 1991, was too remote in time; that it was not admitted for a permissible purpose; that the state failed to prove that he was the perpetrator of the similar transaction; and that its prejudicial impact outweighed its probative value.

(a) "[M]ere lapse of time between the commission of any prior similar crime and the commission of the offense currently at trial does not render the evidence automatically inadmissible; lapse of time is but one factor to be taken into consideration in determining admissibility." *Harris v. State*, 222 Ga. App. 52, 54 (2) (a) (473 SE2d 232) (1996). "It is, moreover, the similarity of the offenses within the meaning of *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991) that determines the admissibility of such evidence, not whether the span of time between offenses is brief." *Nelson v. State*, 242 Ga. App. 63, 65 (4) (528 SE2d 844) (2000).

In the instant case, the prior crime and the crimes for which Johnson was indicted were strikingly similar. The victim of the 1991 offense was also an elderly woman whom Johnson professed to love: his grandmother. While in her bedroom, Johnson asked her for $20. When she refused, Johnson brandished a knife, threatened to kill her, threw her on the floor, and removed money from her wallet.

Johnson then cut the telephone cord and fled.

In any event, we have held that lapses of 11 years and 19 years, respectively, did not prohibit the admission of evidence of similar transactions. See *Rich v. State*, 254 Ga. 11, 14 (1) (325 SE2d 761) (1985); *Cooper v. State*, 173 Ga. App. 254, 255 (1) (325 SE2d 877) (1985). The lapse of time in the case sub judice is far shorter and provides no basis for reversing the trial court's ruling.

(b) Johnson contends that the trial judge committed reversible error by failing to make an affirmative determination on the record that the independent offense was admitted for some lawful purpose other than to place his character into evidence, as required by *Williams*, supra, 261 Ga. at 642 (2) (b). We rejected this argument in *Byrd v. State*, 236 Ga. App. 485, 488-489 (6) (c) (512 SE2d 372) (1999), holding:

> Even if the trial court erred by failing to make specific findings on the record that each of the elements enunciated in *Williams* for admission of the evidence was satisfied, no harmful error occurred because . . . the evidence was sufficient for the trial court to have concluded that the *Williams'* requirements were satisfied.

The record reflects that the state sought to introduce the evidence to show Johnson's course of conduct and bent of mind. The prior crime showed Johnson's inclination to steal money from the elderly by force. It follows that the *Williams'* requirements were met, and no harmful error was committed.

Moreover, contrary to Johnson's argument, the court twice instructed the jury to limit its consideration of the evidence to the purpose of determining Johnson's state of mind.

(c) Next, Johnson argues that the state failed to prove that he was the perpetrator of the independent crime. However, the record reflects that identity was never at issue. When the state sought to introduce a certified copy of Johnson's 1991 guilty plea to armed robbery, defense counsel stated: "I have no objections to that. . . . He pled guilty, took the responsibility for what he did. . . ." Accordingly, this argument is waived.

(d) Johnson maintains that the trial court erred in admitting the similar transaction evidence without first balancing its probative value against its prejudicial impact. However, the trial court is not required to conduct an express balancing determination on the record. *Byrd v. State*, supra at 488 (6) (c). Accordingly, this claim is meritless.

(e) Johnson next argues that the deceased victim's sworn statement was improperly admitted under the necessity exception to the

hearsay rule. However, at the Uniform Superior Court Rule 31.3 hearing, defense counsel conceded that the statement was admissible. Nevertheless, when the officer to whom the victim made her statement began to read it for the jury, defense counsel objected on the ground that reading the statement "went beyond the necessity exception." The objection was overruled. Pretermitting whether Johnson has waived his right to challenge the ruling on appeal, we hold that the trial court did not err in permitting the officer to read the statement to the jury.

> With regard to appellant's assertion that he was denied his right to confront this witness, we note that this Court, in *Moore v. State*, 207 Ga. App. [412, 417 (427 SE2d 779) (1993)], held that when victims of crimes for which appellant had pled guilty were unavailable, it was not error to admit police officers' testimony regarding the victims' prior statements to the officers. "By pleading guilty to these crimes, appellant waived his earlier opportunity to cross-examine the victim when they made the complaints against him." Id. at 417 (2). Appellant, in admitting to the commission of the [armed robbery] of the witness as described in the indictment, waived his right to challenge the witness' statements regarding the incident. Therefore, the admission of the evidence did not violate appellant's right under the Confrontation Clause of the Sixth Amendment of the United States Constitution, and there was no error in admitting the statements under the necessity exception of OCGA § 24-3-1 (b). Id.

*McBee v. State*, 228 Ga. App. 16, 23 (4) (a) (491 SE2d 97) (1997).

(f) Johnson asserts that the trial court erred in permitting the jury to hear his confession to the earlier armed robbery without first conducting a hearing to determine the voluntariness of the confession. This contention is meritless. By entering a guilty plea, Johnson waived any objection to the voluntariness of the confession. "A valid guilty plea is treated as a confession of guilt and waives all defenses known and unknown." (Citation omitted.) *Whitehead v. State*, 207 Ga. App. 891 (1) (429 SE2d 536) (1993).

14. Lastly, Johnson complains that the trial court erred in denying his motion for mistrial, made after a detective testified that the picture of Johnson used in the photographic lineup was "the arrest photo on file." The detective testified that Mobley's relatives alerted him to the fact that Johnson "had been arrested before for a similar incident." Johnson alleges that this testimony impermissibly placed his character in issue. "However, mere mention that a defendant has

been in jail falls short of placing his character at issue." *Taylor v. State*, 272 Ga. 559, 561 (2) (b), (c) (532 SE2d 395) (2000). Accordingly, the trial court did not abuse its discretion in refusing to grant a mistrial.

   *Judgment affirmed. Conviction and sentence on Count 5 vacated. Sentence on Count 7 vacated and remanded. Pope, P. J., and Miller, J., concur.*

DECIDED DECEMBER 6, 2000.

   *Emory B. Bazemore*, for appellant.
   *Spencer Lawton, Jr.,* District Attorney, *Christine S. Barker,* Assistant District Attorney, for appellee.